**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CHAZ Z. RODGERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:13-CV-2031-M-BH** |
| | ) | |
| **CITY OF LANCASTER POLICE et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge** |

<u>**FINDINGS, CONCLUSIONS AND RECOMMENDATION**</u>

Pursuant to *Special Order No. 3-251*, this case has been automatically referred for pretrial management. Based on the relevant filings and applicable law, the complaint should be **DISMISSED**, and *Methodist Hospital of Dallas' Motion to Dismiss or Alternatively Quash Service and Brief in Support*, filed July 18, 2016 (doc. 53) and *Methodist Hospitals of Dallas' Second Motion to Dismiss or Alternatively Quash Service and Brief in Support*, filed August 15, 2016 (doc. 55) should be **DENIED AS MOOT**.

**I. BACKGROUND**

On May 30, 2013, Chaz Z. Rodgers (Plaintiff) filed this action under 42 U.S.C. § 1983 against several defendants based on their response to the shooting of her son, Anthony D. Hudson. (*See* doc. 3 at 1.)[1] She sues on behalf of herself and her son's estate. (*See* docs. 3, 22, 30, 52.)

**A.     <u>Factual Background</u>**[2]

At 11:06 PM on July 23, 2011, during a birthday party attended by 200 to 300 people in

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] Plaintiff was not present at the scene and bases her allegations on her review of dashcam videos, alleged discrepancies in testimony at the Shooter's criminal trial, and on the fact that the "data of police gun and bullets fired" were withheld from her. (*See* docs. 30 at 5-9; 52 at 4, 12.)

Lancaster, Texas, more than 20 shots were fired into the crowd, and Plaintiff's son was hit in the head.  (*See* docs. 30 at 8, 13; 52 at 12.)  Several people made 911 calls reporting both major and minor disturbances, and a shooting.  (doc. 30 at 8.)  The Lancaster Police Department (LPD) dispatched Lieutenant Bryan Dorsey and Officers Michael Smith, Erick Alexander, James Skach, Michael Adams, Jason Tap Scott, Delta Graf, and James Grimes.  (*Id.* at 4.)  The Lancaster Fire Department (LFD) was also notified that shots were fired, and EMT-Paramedics Jeremy Stuckey and Daniel Bufe were dispatched to the scene at 11:29 PM.[3]  (*Id.* at 13.)

Plaintiff appears to allege that the responding officers initially concluded that the shots fired were "fireworks," and that no immediate action was needed.  (doc. 30 at  at 4.)  When they did understand the seriousness of the situation, instead of immediately rendering medical assistance to her son and transporting him to an appropriate medical facility, the officers either thought he was "dead on arrival" or ignored him to render aid to others.  (docs. 30 at 4-5, 8; 52 at 6-7.)  The officers' actions caused her son to be alone for approximately 26 minutes before any aid was given to him.  (docs. 30 at 4-5, 8; 52 at 6-7.)  Plaintiff also alleges that the officers failed to properly preserve evidence, identify witnesses, document and protect the integrity of the crime scene, and they caused the destruction or loss of evidence, in part by directing six eyewitnesses to leave the scene without questioning them.  (*See* doc. 30 at 21-31; doc. 5 at 6.)  She also seems to contend that the officers gave her less notice and attention than what they gave the parents of other children who were also injured or killed.  (*Id.* at 5.)  For example, she alleges that other parents were given courtesy calls and transported to the medical facility, while she was not.  (*See id.*)

Plaintiff alleges that when the EMTs arrived at the scene, they were instructed not to go into

---

[3] Plaintiff alleges that both EMTs were employees of the LFD.  (*See* docs. 30 at 2; 52 at 8-9.)

the compound for 20 to 30 minutes because of the continuous firing of weapons.  (docs. 30 at 14; 52 at 8.)  When they did locate her son, the EMTs found that he was alive but had an exit wound to the back of his head, had lost a large amount of blood, was immobilized, suffered from a distracting injury and neurologic deficit, and had an altered mental state, and they inserted a nasal trumpet. (doc. 30 at 13-14.)

The EMTs transferred Plaintiff's son to Methodist Hospitals of Dallas (Hospital), a Level II trauma center,[4] where he was admitted at 11:58 PM.  (*Id.* at 14, 17.)  According to Plaintiff, the EMTs discriminated against her son by taking him in an "old" and "inadequate" ambulance to an "unequipped level II facility," rather than by air transport to a Level I trauma center.  (doc. 52 at 8-9.)  She alleges that once her son arrived at Hospital, he was treated differently from other trauma patients because of his ethnicity and indigent status because he was not sent to the Intensive Care Unit or the Coronary Care Unit, did not receive CPR, and was segregated in an "unequipped healthcare room."  (*Id.* at 8-10.)  Additionally, Hospital did not notify Plaintiff when Doctor removed a bullet or update her regarding his condition, and there was no consent to remove her son from life support.  (docs. 30 at 33; 52 at 2, 11.)

Abi Mikkel Finberg-Provence, R.N. (Nurse), was a nurse on the trauma team, and David P. Bryant, D.O. (Doctor), was the ER staff physician when her son arrived at Hospital.  (doc 30 at 14.) No neurosurgeon was present, and "[b]efore initiating neurosurgeon assistance," Doctor "verbally order[ed] . . . Propofol to sedate/euthanize [her son] not once but twice or three times."  (docs. 30 at 17; 52 at 10.)  Plaintiff alleges that "[t]hese steps caused a significant delay in treatment of critical patient with gunshot wound to face/head and commencement of therapy; resulted in their desire [to]

---

[4] Plaintiff refers to Level I, II, and III "treatment facilit[ies]" in her answers.  (*See, e.g.,* doc. 52 at 8-9.)

assure he died." (*Id.*)  Plaintiff's son died of his wounds, and an autopsy was performed.  (*See id.* at 18.)

On December 14, 2012, Devon O'Brien Candler was convicted of second degree manslaughter for the shooting of Plaintiff's son.  (*Id.* at 7.)

**B.**   **Procedural History**

On May 30, 2013, Plaintiff filed her complaint and moved for leave to proceed *in forma pauperis*.  (*See* docs. 3, 5.)  She was advised by *Notice of Deficiency and Order*, dated June 3, 2013, that she could not represent her son's estate *pro se*, and that she must obtain legal counsel within 14 days to proceed on behalf of the estate.  (*See* doc. 10.)  Plaintiff subsequently sought and was granted permission to file an amended complaint asserting only her own claims.  (*See* doc. 20, 21.) She filed her first amended complaint on July 10, 2013.  (*See* doc. 22.)

On July 30, 2013, all claims on behalf of Plaintiff's son's estate were dismissed without prejudice in a partial judgment because an "individual *pro se* plaintiff may not prosecute [a] complaint on behalf of her son's estate without legal counsel."  (doc. 27 at 1.)  After receiving leave, Plaintiff filed her second amended complaint on August 7, 2013.  (*See* docs. 23-25, 29-30.)

On March 13, 2014, Plaintiff's claims in her second amended complaint were *sua sponte* dismissed without prejudice for lack of jurisdiction in part because her "claims on behalf of her son's estate [were] already . . . dismissed without prejudice, and she [could] not reassert them . . . *pro se*" in her second amended complaint.  (docs. 33 at 3, 35.)  Additionally, Plaintiff's personal claims were dismissed without prejudice for lack of subject-matter jurisdiction because her "wrongful death action and her claims of gross negligence [arose] solely under state law."  (*Id.* at 4.)  That same day, a final judgment was issued dismissing Plaintiff's second amended complaint

4

without prejudice for lack of subject-matter jurisdiction.  (doc. 36.)

On April 1, 2014, Plaintiff appealed to the United States Court of Appeals for the Fifth Circuit from the order dismissing her case without prejudice.  (doc. 37.)  The Fifth Circuit found that "although [Plaintiff] appeared to assert only a wrongful-death claim, [she] pleaded a claim under the federal civil-rights laws, so there is federal-question jurisdiction."  *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 208 (5th Cir. 2016), *cert. denied,* 137 S. Ct. 304 (2016).[5]  It also found as a matter of first impression that "[a] person with capacity under state law to represent an estate in a survival action may proceed *pro se* if that person is the only beneficiary and the estate has no creditors."  *Id.* at 211.  Accordingly, it reversed and remanded.[6]  *Id.* at 213.  The Fifth Circuit issued its mandate on May 26, 2016 (doc. 46), and the Supreme Court of the United States denied Plaintiff's petition for a writ of *certiorari* on October 11, 2016 (doc. 63).

On remand, the Court ordered Plaintiff to file a third amended complaint within thirty days that included allegations sufficient for a determination of whether she was her son's sole heir.  (doc. 48 at 2.)  On June 17, 2016, she moved for leave to file an affidavit in response to the district court's order.  (doc. 49.)  A magistrate judge's questionnaire was sent to her "in order to obtain the information requested by the order as well as additional necessary information about her claims."

---

[5] The finding of federal-question jurisdiction appears to have been based on language in Plaintiff's original complaint that was omitted from her live second amended complaint.  *Compare Rodgers*, 819 F.3d at 209 (noting without citation that "Rodgers alleged in her complaint, 'I intend to prove Civil Rights Violations . . . and action of bias racial profiling [sic], discrimination, gross negligence's [sic ], . . . [and] intentional misconduct.'") *with* (doc. 3 at 11 (statement in Plaintiff's original complaint that "I intend to prove Civil Rights Violations and Medical Malpractice and violations of inappropriate medical transportation with cause and action of bias racial profiling, discrimination, gross negligence's, [sic] pure evil, recklessness, intentional misconduct, misrepresentation, fraud, standard of care, standard of rendering aid and a tsunami of personnel issues which could have saved a life and/or a chance of life.")).

[6] The Fifth Circuit expressly placed no limits on the matters that could be considered by the district court on remand. *Rodgers*, 819 F.3d at 213.

5

(docs. 50 at 1; 51.)  Plaintiff filed her answers to the questionnaire on June 15, 2016.[7]  (*See* doc. 52.)

According to the answers, Plaintiff's son was 15 years old at the time of his death, did not have a will, was not married, and had no biological nor adopted children.  (doc. 52 at 14.)  Plaintiff alleges that she is her son's "surviving single parent" and "the primary beneficiary in this action for wrongful death."  (doc. 30 at 19.)  She has "no knowledge of" her son's father being deceased, however.  (doc. 52 at 14.) She initially stated that her son had no whole or half siblings but later stated that she had "no interest to know what father may or may not have for children."  (*Id.*)

Plaintiff's answers specify that she is suing all of the individual defendants in their official capacities and clarify that she is bringing a survival action on behalf of her son's estate.  (*Id.* at 1-13, 15.)  She now appears to also sue the City of Lancaster (the City), Hospital, Doctor, the Shooter, and the law firm of Nicholas, Jackson, Dillard, Hager & Smith, LLP (Law Firm) (Defendants), which she appears to contend represented some of the police officers.  (*See id.* at 4-9.)  In addition to the gross negligence claim and survival action alleged in her second amended complaint, Plaintiff now also alleges violations of her son's civil rights and wrongful death under 42 U.S.C. §§ 1983-85; medical malpractice under the Federal Tort Claims Act; violations of the Emergency Medical Treatment and Active Labor Act; and state law claims for conspiracy, fraud, negligence, and medical malpractice.  (*See id.*)

## II. PRELIMINARY SCREENING

Because Plaintiff is proceeding *in forma pauperis*, her complaint is subject to judicial screening under 28 U.S.C. § 1915(e)(2)(b).  That statute provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a

---

[7] Plaintiff's answers constitute an amendment to the second amended complaint.  *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

### III. REPRESENTATION OF SON'S ESTATE

Plaintiff purports to sue all of the defendants under the Texas survival statute on behalf of her son's estate. (*See* docs. 30, 52.) The Fifth Circuit remanded "for a determination of her capacity to sue under the Texas survival statute," clarifying that "[a] person with capacity under state law to represent an estate in a survival action may proceed *pro se* if that person is the *only beneficiary and the estate has no creditors*." *Rodgers*, 819 F.3d at 211, 213 (emphasis added).

The Texas survival statute does not create a new cause of action; it ensures that the decedent's causes of action survive his or her death. *See Pack v. Crossroads, Inc*., 53 S.W.3d 492, 515 (Tex. App.—Fort Worth 2001, pet. denied) (contrasting with the wrongful death act). Under Texas law, "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." Tex. Civ. Prac. & Rem. Code Ann. § 71.021(b). Accordingly, "[t]he

Survival Statute provides that only a personal representative, administrator, or heir may sue on behalf of an estate." *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998). "[A] decedent's estate is not a legal entity and may not properly sue or be sued as such. . . . [T]he law therefore grants another party the capacity to sue on their behalf." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (quotation marks and citations omitted).

Under Texas law, "[i]f a person who dies intestate does not leave a spouse, the estate to which the person had title descends and passes in parcenary to the person's kindred in the order provided by [§ 201.001]."[8] Tex. Est. Code Ann. § 201.001(a) (West 2014). A person's estate first descends and passes to the deceased's children and the children's descendants, if living. *Id.* § 201.001(b). If no child or the child's descendant survives the deceased, "the person's estate descends and passes *in equal portions* to the person's father and mother." *Id.* § 201.001(c) (emphasis added).

> (d) If only the person's father or mother survives the person, the person's estate shall:
> > (1) be divided into two equal portions, with:
> > > (A) one portion passing to the surviving parent; and
> > > (B) one portion passing to the person's siblings and the siblings' descendants; or
> > (2) be inherited entirely by the surviving parent if there is no sibling of the person or siblings' descendants.

*Id.* § 201.001(d). Additionally, "[i]f the inheritance from an intestate passes to the collateral kindred of the intestate and part of the collateral kindred are of whole blood and the other part are of half blood of the intestate, each of the collateral kindred who is of half blood inherits only half as much

---

[8] Coparcenary is defined as "[a]n estate that arises when two or more persons jointly inherit from one ancestor, the title and right of possession being shared equally by all. • Coparcenary was a form of coownership created by common-law rules of descent upon intestacy when two or more persons together constituted the decedent's heirs. . . . Also termed *parcenary*; *tenancy in coparcenary*." *Coparcenary*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see Parcenary*, BLACK'S LAW DICTIONARY (10th ed. 2014) (referring reader to Coparcenary).

as that inherited by each of the collateral kindred who is of whole blood." *Id.* § 201.057.

Here, Plaintiff alleges that her son was 15 years old when he died, he did not have a will, he was not married, and he had neither biological nor adopted children.[9] (doc. 52 at 14.)  She does not allege that her son's father predeceased him, that his parental rights were relinquished, or that he is otherwise not entitled to a share of his son's estate under Texas law, if living.  *See Ramirez ex rel. Ramirez v. Bexar Cty.*, No. SA-10-CV-0296 FB (NN), 2011 WL 4565473, at *2 (W.D. Tex. Sept. 29, 2011).  She also does not allege that her son has no siblings through his father.  (doc. 52 at 14).  Because Plaintiff has not alleged that she would be her son's sole heir, she would also be representing other legal heirs of her son's estate in this *pro se* action.

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  28 U.S.C. § 1654.  Individuals who do not have a law license may not represent other parties in federal court even on a next friend basis, however.  *Weber v. Garza,* 570 F.2d 511, 514 (5th Cir.1978); *see also Guajardo v. Luna,* 432 F.2d 1324 (5th Cir. 1970) (holding that only licensed lawyers may represent others in federal court).  Plaintiff may not bring this *pro se* case on behalf of her deceased son's estate because there is at least one other legal heir.  *See Rodgers*, 819 F.3d at 210-11 ("It is axiomatic that an individual may proceed *pro se* in civil actions in federal court, *see* 28 U.S.C. § 1654, but it is equally certain that those not licensed to practice law may not represent the legal interests of others, *see Weber v. Garza*, 570 F.2d 511, 514 (5th Cir.1978).").  Plaintiff's claims on behalf of her son's estate should therefore be dismissed without prejudice.

---

[9] Plaintiff does not appear to specifically allege that her son had no creditors.

9

## IV. PLAINTIFF'S FEDERAL CLAIMS

Plaintiff asserts federal claims against Defendants for violations of her son's civil rights and wrongful death under 42 U.S.C. §§ 1983-85, and claims against the City,[10] Hospital,[11] Doctor,[12] Law Firm for medical malpractice under the Federal Tort Claims Act and for violations of the Emergency Medical Treatment and Active Labor Act. (doc. 52 at 2-3, 10-11, 13.)

### A.     <u>Federal Tort Claims Act</u>

Plaintiff purports to sue Hospital, Law Firm, Doctor, and the City for medical malpractice under the Federal Tort Claims Act (FTCA).   (*See id.* at 2-3, 10-11, 13.)

"The FTCA authorizes civil actions for damages *against the United States* for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (emphasis added) (citing 28 U.S.C. §§ 1346(b)(1), 2674).   Here, Plaintiff brings her claim against a municipality, a doctor in private

---

[10] Plaintiff names former-Chief Larry Flatt, Lieutenant Bryan Dorsey, and Officers James Skach, Michael Adams, and James Grimes of the LPD, and Chief Thomas L. Griffin and EMTs Jeremy Stuckey and Daniel Bufe of the LFD as defendants.   Because she sues all of them in their official capacities, her suit against the police and fire department employees is actually a suit against the City.   *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 430 n.2 (5th Cir. 1993) (per curiam) (noting that claims against police officers in their official capacities are "tantamount to claims against their employer the city"); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978) (noting "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Accordingly, all claims alleged against these defendants are considered as having been brought against the City.

[11] Plaintiff alleges that Nurse is an employee of Hospital.   (docs. 30 at 3; 52 at 11.)   Because she sues Nurse in her official capacity, Plaintiff's claims against Nurse are actually against Hospital.   *See Monell*, 436 U.S. at 690 n. 55.   Additionally, Plaintiff's second amended complaint seems to name C.T. Corporation and Physicians and North Texas Trauma Group (Trauma Group) as additional defendants.   (*See* doc. 30 at 40.)   It claims that Hospital and Trauma Group are both formerly known as C.T. Corporation, and Trauma Group is part of Hospital.   (*See id.*)   Because C.T. Corporation and Trauma Group are allegedly part of (or a former name of) Hospital, to the extent that Plaintiff intends to name them as additional defendants, any claims alleged against them also are considered as having been brought against Hospital.

[12] Plaintiff's second amended complaint also alleges that Doctor was an employee of Hospital (doc. 30 at 3), but her answers to the questionnaire no longer seem to allege that he is Hospital's employee (doc. 52 at 10).   He is therefore considered separately from Hospital.

practice, a non-federal hospital, and a private law firm.  (*See* doc. 52 at 2-3, 10-11, 13).  Because Plaintiff is not suing the United States, the FTCA is inapplicable, and her medical malpractice negligence claim under the FTCA should be dismissed for failure to state a claim.

**B.**     **Emergency Medical Treatment and Active Labor Act**

Plaintiff sues Hospital, Law Firm, Doctor, and the City under the Emergency Medical Treatment and Active Labor Act (EMTALA) for patient dumping.  (*See* doc. 52 at 2-3, 10-11, 13.)

"[EMTALA] was not intended to be used as a federal malpractice statute, but instead was enacted to prevent 'patient dumping', which is the practice of refusing to treat patients who are unable to pay."  *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998).  "The act requires that participating hospitals give the following care to an individual who is presented for emergency medical care: (1) an appropriate medical screening, (2) stabilization of a known emergency medical condition, and (3) restrictions on transfer of an unstabilized individual to another medical facility."  *Battle ex rel. Battle v. Memorial Hosp. at Gulfport*, 228 F.3d 544, 557 (5th Cir. 2000) (citing 42 U.S.C. § 1395dd(a)-(c)).  "The hospitals covered by this statute are hospitals with emergency room departments that execute Medicare provider agreements with the federal government pursuant to 42 U.S.C. § 1395cc."  *Miller v. Med. Ctr. of Sw. La.*, 22 F.3d 626, 628 n.4 (5th Cir. 1994).

The civil enforcement provisions of EMTALA create a private right of action for any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of the statute.[13]  *See* 42 U.S.C. § 1395dd(d)(2)(A).  Although § 1395dd(d)(2) creates

---

[13] The civil enforcement provision of EMTALA provides:

**(A) Personal harm**
Any individual who suffers personal harm as a direct result of a participating hospital's violation of

11

a private cause of action in favor of individuals against hospitals for EMTALA violations, "[t]he statute, however, provides no such cause of action against physicians." *Smith v. Janes*, 895 F. Supp. 875, 879 (S.D. Miss. 1995) (citing *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1040, n.1 (D.C. Cir. 1991) (noting that the language in § 1395dd(d)(2)(A) that provides "any individual who suffers personal harm . . . may, in a civil action *against the participating hospital*, obtain [damages and equitable relief]," makes it "clear that there is no private cause of action against physicians under the Emergency Act.") (citation omitted)); *accord Vaughn ex rel. Vaughn v. Hosp. Serv. Dist. No. 1 Jefferson Parish*, No. CIV.A.01-3456, 2002 WL 126649, at *1 (E.D. La. Jan 30, 2002) (noting "[a] review of the relevant case law demonstrates that the federal courts that have addressed this argument have found no private cause of action against physicians under EMTALA") (citing cases).

Because EMTALA only provides for civil enforcement against participating hospitals, Plaintiff fails to state a claim under it against Law Firm, Doctor, and the City.  Even if Hospital is a "participating hospital," Plaintiff has not alleged that she suffered a personal harm.[14]  Her allegations of harm solely relate to her son.  (*See* docs. 30 at 14-18, 52 at 2, 11.)  She has therefore also failed to state an EMTALA claim against Hospital.

## C.     <u>42 U.S.C. § 1983</u>

Plaintiff sues Defendants for wrongful death under § 1983.  (*See* doc. 52 at 2-3, 10-13.)

---

a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A).

[14] As noted, Plaintiff is bringing this claim in her individual capacity and not as a representative of her son's estate under a survival statute.

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  The Fifth Circuit has held that 42 U.S.C. § 1988 incorporates state law wrongful death statutes under § 1983.  *See Rhyne v. Henderson Cty.*, 973 F.2d 386, 390-91 (5th Cir. 1992); *see also Rodgers*, 819 F.3d at 208-09 (citing *Rhyne*, 973 F.2d at 391; 42 U.S.C. § 1988(a)). Wrongful death statutes create new causes of action on behalf of the statutorily-designated persons in order to compensate them for the death of a decedent.  *See Phillips ex rel. Phillips v. Monroe Cty.*, 311 F.3d 369, 374 (5th Cir. 2002), *cert. denied*, 539 U.S. 914 (2003). Texas's wrongful death statute, Texas Civil Practices & Remedies Code § 71.004, recognizes the right of surviving parents of a child to bring an action for their own benefit.  *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).  Plaintiff therefore has standing to sue under § 1983 for her own injuries as a result of the deprivation of her son's constitutional rights.

To recover on a wrongful death claim under § 1983, a plaintiff who has standing must show *both* (1) the alleged constitutional deprivation required by § 1983 *and* (2) the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute.[15]  *See Phillips*, 311 F.3d at 374.  Additionally, a "wrongful death action cannot be maintained unless the defendant's conduct is the cause of the decedent's death." *Id.*  "Texas law is clear that '[u]nder the Wrongful Death Act, liability may be predicated only on

---

[15] In considering a wrongful death claim under § 1983 against a municipality in *Rhyne v. Henderson Cty.*, 973 F.2d 386 (5th Cir. 1992), the Fifth Circuit appeared to consider the alleged constitutional deprivation required by § 1983 in the context of municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  *See Rhyne*, 973 F.2d at 392. Accordingly, to plead a wrongful death claim under § 1983 against a municipality, a plaintiff must first plead the elements of municipal liability under § 1983 and then the causation element required for wrongful death.  *See id.*; *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 415 (1997) (noting "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights") (emphasis in original).

an injury that causes an individual's death.'" *Slade v. City of Marshall*, 814 F.3d 263, 264 (5th Cir. 2016) (international quotation marks omitted) (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993)); *accord Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005). "That is, a plaintiff seeking to recover under Texas's wrongful death statute must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—*not just that they reduced the decedent's chance of survival by some lesser degree*." *Id.* at 264-65 (emphasis added); *see Kramer*, 858 S.W.2d at 404 ("[T]he Act authorizes recovery solely for injuries that cause death, not injuries that cause the loss of a less-than-even chance of avoiding death. Hence, the Act on its terms does not authorize recovery under the separate injury approach to loss of chance.").

### 1.     City

Plaintiff generally alleges violations under the First and Fourteenth Amendments against the City.[16] (*See* doc. 52 at 4-9, 13.)

Plaintiff argues that the City violated her son's rights to "redress grievances" under the First Amendment. (*Id.*)   The First Amendment proscribes that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.  Her argument appears to implicate the Petition Clause, which protects "the right of access to courts for redress of wrongs" and  protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011).

---

[16]  Plaintiff also alleges violations of the Fifth Amendment. (doc. 52 at 4-9, 13.)  The Fifth Amendment only applies to the actions of the federal government, however. *Richard v. Hinson*, 70 F.3d 415, 416 (5th Cir. 1995).  To the extent that Plaintiff relies on the due process clause and equal protection violations of the Fifth Amendment, these claims are considered under the Fourteenth Amendment.

Plaintiff also argues that the City violated her son's due process rights under the Fourteenth Amendment. (*See* doc. 52 at 4-9, 13.) "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The Supreme Court has long recognized that the Due Process Clause is more than a guarantee of procedural fairness and "cover[s] a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.' " *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "The reach of substantive due process is limited, however, and it protects against only the most serious of governmental wrongs." *Moore v. Dall. Indep. Sch. Dist.*, 557 F. Supp. 2d 755, 761 (N.D. Tex. 2008) (citation omitted).

Finally, Plaintiff argues that the City violated her son's equal protection rights under the Fourteenth Amendment. (*See* doc. 52 at 4-9, 13.) To maintain an equal protection claim, a plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001).

Here, Plaintiff appears to rely on the actions of the officers and EMTs to support her claim against the City. (*See* doc. 52 at 4-9, 13.) "A municipality, of course, can act only through its human agents, but it is not vicariously liable under § 1983," *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992) (citations omitted), and it is well-settled that a municipality cannot be liable

15

under a theory of *respondeat superior*,[17] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases).   A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights.   *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).   "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."   *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694); *accord Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

### a.   Policymaker

The Fifth Circuit recently clarified in *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016), that to state a claim upon which relief can be granted, "a plaintiff is *not* required to single out the specific policymaker in his complaint."   *Id.* at 282 (emphasis added).   To sufficiently to state a claim upon which relief can be granted to survive a motion to dismiss,

> [a plaintiff need] only to plead facts—facts which establish that [a] challenged policy was *promulgated or ratified by the city's policymaker*. [Her] complaint did not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme.

*Id.* at 285 (emphasis added).[18]   The case involved a claim against the City of Dallas for a "crackdown policy" of arresting vendors without probable cause "in retaliation for annoying-but-protected

---

[17] *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Respondeat Superior*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[18] The identity of the policymaker official is a question of state law and not of fact. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "Sometimes, a court can make this determination by consulting state statutes. . . . [or] courts may need to consult 'local ordinances and regulations.' " *Groden*, 826 F.3d at 284 n.5 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (per curiam) (consulting the Texas Government Code to determine the policymaker for Texas cities); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir.1993)  (consulting the Texas Educational Code to determine the policymaker for Texas school districts); *Praprotnik*, 485 U.S. at 125).

speech" in Dealey Plaza. *Id.* at 286.  Because the plaintiff alleged that the city's official spokesman publically announced the new policy of cracking down on vendors in Dealey Plaza and gave media interviews describing the new policy, the Fifth Circuit found that the plaintiff had sufficiently pleaded promulgation or ratification by a policymaker even though he had not specifically identified one.  *See id.* at 286.

Here, Plaintiff seems to identify Chief Flatt and Chief Griffin as decisionmakers, but she does not identify a policymaker or actions taken by a policymaker.[19]  Specifically, she alleges that:

> [b]oth 'deliberately indifferent' decision makers inspired to conspire with Dallas County prosecutors and judge to withhold 911 emergency call, spoliation of evidence with dash-cam video, failure to protect the rights of person of grievance request for internal affairs to distinguish bullet fired by officers; the omission to comply with free speech violation under first amendment and equal protection law. . . ., 'meeting of minds' of conspiracy to follow to wrong don't make a right' and none policy compliance with HEMS over ground transportation a decision need for a traumatic event.

(doc. 52 at 13.)  She also seems to primarily rely on the actions of the officers and EMTs at the scene following the shooting of her son.  (*See id*. at 5.)

Even accepting Plaintiff's well-pleaded facts as true and viewing them in the light most favorable to her, she fails to identify any policymaker or point to any actions by the City to ratify or promulgate any policy.  (*See* docs. 30, 52.)  Even though Plaintiff's complaint need not "supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme," which she can determine in discovery, she needs to plead some "facts which

---

[19] "The Supreme Court and the Fifth Circuit have emphasized that, in the context of section 1983 claims, courts must be sensitive to the distinction between decisionmakers and final policymakers."  *Pogue v. City of Dallas*, No. 3:13-CV-4702-B, 2014 WL 3844675, at *6 (N.D. Tex. Aug. 4, 2014) (citations omitted); *see Praprotnik*, 485 U.S. at 125; *see also Bolton*, 541 F.3d at 548-49 ("Our analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental. . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function.") (citations omitted); *Jett*, 7 F.3d at 1247 (explaining distinction between final policymaking authority and mere decisionmaking).

establish that the challenged policy was promulgated or ratified by the city's policymaker," whoever

they are. *Groden*, 826 F.3d 285. Plaintiff's mere conclusory statements are devoid of any facts that

establish any involvement by the City or its policymakers. (*See* docs. 30, 52.)   Because Plaintiff

has alleged no facts that any policymaker promulgated or ratified an unconstitutional policy or from

which a reasonable inference can be made that it promulgated or ratified an unconstitutional policy,

she fails to allege sufficient facts to "raise [her] right to relief above the speculative level." *See*

*Twombly*, 550 U.S. at 555.

### b.   *Official Policy or Custom*

To show municipal liability, a plaintiff must also show an official policy or custom. *See*

*Piotrowski*, 237 F.3d at 578.

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted
and promulgated by the municipality's lawmaking officers or by an official to
whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although
not authorized by officially adopted and promulgated policy, is so common and well
settled as to constitute a custom that fairly represents municipal policy. Actual or
constructive knowledge of such custom must be attributable to the governing body
of the municipality or to an official to whom that body had delegated policy-making
authority. Actions of officers or employees of a municipality do not render the
municipality liable under § 1983 unless they execute official policy as above
defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City*

*of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff

must demonstrate that it was promulgated with deliberate indifference to known or obvious

consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579-80 & n.22;

*accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert. denied*, 562 U.S.

18

827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to plead municipal liability. *Spiller*, 130 F.3d at 167. It also found that an assertion that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support alleged municipal liability under *Monell*. *Id.*

In addition, a single incident is insufficient to infer an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to

protect inmates at the county jail."), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012).

Here, Plaintiff only vaguely alludes to a discriminatory policy or racial bias by the City in violation of the First and Fourteenth Amendments.  (*See* docs. 30, 52.)  In her questionnaire answers regarding the specific basis of her claim, Plaintiff vaguely referred to racial profiling six to eight years before her son's death to allege a municipal custom.  (doc. 52 at 13.)  She also seems to point to the actions of the various responding officers and EMTs to show a nebulous policy of past discrimination.  (*See id.* at 4-9.)  Her live complaint and questionnaire answers do not identify a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by the City's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.  (*See* docs 30, 52.)  Because Plaintiff relies on essentially a single incident, vague generalities, and conclusions, she has not sufficiently alleged an official policy or custom, a necessary element to municipal liability under *Monell.*  She therefore fails to nudge her claim for wrongful death under § 1983 against the City across the line from conceivable to plausible.  *See Twombly*, 550 U.S. at 555.[20]

---

[20] Even if Plaintiff had sufficiently alleged municipal liability against the City, she still fails to allege a "causal link between [the City's] unconstitutional acts or omissions and the death of the victim."  *See Phillips*, 311 F.3d at 374.  To recover under Texas's wrongful death statute, a plaintiff "must demonstrate that the defendant's wrongful actions more likely than not caused the decedent's death—not just that they reduced the decedent's chance of survival by some lesser degree."  *Slade*, 814 F.3d at 264-65.  Here, Plaintiff seems to allege that her son's death was the direct result of actions by Hospital, Doctor, and Nurse, and not the City (or its employees).  (*See* doc. 52 at 8, 9, 11.)  She alleges that her son's death was caused by an "incomplete trauma team," discrimination at that caused her son to receive lower-quality medical treatment at Hospital and be "easily forgotten by staffer[s] and chart nurse[s]," and that Doctor administered a "lethal drug propofol dosage without a ventilator."  (doc. 52 at 10-12, 15.)  She also alleges that Doctor euthanized her son and that he used his hands as a "deadly weapon" against him.  (doc. 30 at 42.)  Elsewhere, she also alleges that "[t]his delay of Standard of Care to Render Aid [at Hospital] and the Competence of the Doctor decision making was a *proximate cause of his death.*"  (*Id.* at 18) (emphasis added).  Accordingly, even if Plaintiff had sufficiently alleged municipal liability against the City, her wrongful death claim would still be subject to dismissal for failure to allege causation.  Likewise, had Plaintiff sued the officers or EMTs in their individual capacities, or the extent that her questionnaire answers could liberally be construed alleging a wrongful death claim against the various officers and EMTs in their individual capacities, her wrongful death claim would still be subject to dismissal for the same reason causation fails against the City.

### 2.      *Private Parties*

Plaintiff also brings her wrongful death claim under § 1983 against the Hospital, Law Firm, Doctor, and the Shooter.  (doc. 52 at 2-3, 10-12.)

In some circumstances, a private party may be acting "under color of state law" and held liable under § 1983.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).  Additionally, a private party can be held to be a state actor under only three circumstances, (1) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (3) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that of the state.  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1981); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357 (1974).

Here, Plaintiff has sued a private hospital, a private doctor, a private citizen, and a private law firm for wrongful death under § 1983.  She has not alleged any facts to support a finding that they acted under color of law, conspired with a state actor, or exercised powers that were traditionally the exclusive prerogative of the state.  (*See* docs. 30, 52.)  She relies solely on their individual actions in support of her claim.  She has failed to state a wrongful death claim under § 1983 against Hospital, Law Firm, Doctor, and the Shooter.

### D.      <u>Section 1984</u>

Plaintiff purports to sue Defendants under § 1984.  (doc. 52 at 2-3, 10-13.)  "Section 1984 no longer exists," however.  *See Hamilton v. Serv. King Auto Repairs*, No. 3:09-CV-1415-L, 2010

WL 2540812, at *2 (N.D. Tex. May 18, 2010), *adopted by* 2010 WL 2540793 (N.D. Tex. June 22,

2010).  Its first two sections were declared unconstitutional.  *United States v. Stanley*, 109 U.S. 3,

26 (1883).  The remaining sections were repealed by Congress.  *Hamilton*, 2010 WL 2540812, at

*2.  Plaintiff's § 1984 claim against all defendants should be dismissed for failure to state a claim.

## E.    Section 1985

Plaintiff appears to allege a violation of 42 U.S.C. § 1985(3) against Defendants.[21]  (doc. 52

at 2-3, 10-13.)

"Title 42 U.S.C. § 1985, part of the Civil Rights Act of 1871, creates a private civil remedy

for three prohibited forms of conspiracy to interfere with civil rights under that section."  *Montoya*

*v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010).  Subsection 3 prohibits a

conspiracy to deprive any person or class of persons of the equal protection of the law, or of equal

privileges and immunities under the law.  42 U.S.C. § 1985(3).  "To state a claim under § 1985(3),

a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person

of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes

injury to a person or a deprivation of any right or privilege of a citizen of the United States."  *Lockett*

*v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (per curiam) (citing *Hilliard v. Ferguson*,

30 F.3d 649, 652-53 (5th Cir.1994)).  Additionally, the conspiracy must have a class or race-based

animus.  *See id.*; *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001).

Plaintiff has alleged none of the elements of a conspiracy under § 1985, and in particular,

she has alleged no facts demonstrating the existence of any alleged conspiracy whose purpose was

---

[21] Although Plaintiff does not specify subsection 3 in alleging a § 1985 claim, her allegations relate to the deprivation of rights or privileges and not preventing an officer from performing his or her duties or intimidation of a party, witness, or juror.  *See* 42 U.S.C. § 1985.  Accordingly, her § 1985 claim is construed as arising under § 1985(3).

to deprive *her* of equal protection of the laws *based on* racial animus or any other protected characteristic.  To the extent that she alleges a conspiracy under § 1985, those allegations related to her son.  Her § 1985 claim should be dismissed.

In conclusion, Plaintiff's federal claims should be dismissed.[22]

## V. PLAINTIFF'S STATE LAW CLAIMS

Plaintiff also appears to allege state law claims against the defendants for conspiracy, fraud, negligence, gross negligence, and medical malpractice.[23]  (doc. 52 at 2-3, 10-13.)

### A.   Supplemental Jurisdiction

Pursuant to § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus

---

[22] Plaintiff's second amended complaint lists several alleged violations of the Health Insurance Portability and Accountability Act (HIPAA) against Doctor and Hospital.  (*See* doc. 30 at 32-34, 42-44.)  For example, she accuses them of speaking opening in the hallway where other patients could hear and failing to speak to her about her son's condition.  (*Id.*)  HIPAA generally provides for confidentiality of medical records, including both civil and criminal penalties for improper disclosures of medical information.  42 U.S.C. §§ 1320d–1 to d–7.  Enforcement of the statute limited to the Secretary of Health and Human Services, however, and "there is no private cause of action under HIPAA."  *See id.; Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) (per curiam).  To the extent that Plaintiff also seeks to sue Doctor and Hospital for alleged HIPAA violations, any claim should be dismissed for failure to state a claim.

[23] Plaintiff's second amended complaint also appears to assert vicarious liability as a separate cause of action.  (*See* doc. 30 at 32-33, 37-43.)  Under Texas law, vicarious liability, or *respondeat superior*, is a theory of liability that makes a principal liable for the conduct of its employee or agent.  *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (5th Cir. 2007) (citing *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)).  The theory is based on a principal's control or right to control its agent's actions.  *Id.* (citing *Wingfoot v. Alvarado*, 111 S.W.3d 134, 136 (Tex. 2003)).  Accordingly, vicarious liability is only a theory of recovery for other causes of action and not a distinct cause of action itself.  To the extent that the second amended complaint appears to allege vicarious liability as a separate cause of action, Plaintiff fails to state a plausible claim upon which relief can be granted.

of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 WL 2381246, at

*4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers of Am. v. Gibbs*,

383 U.S. 715, 725 (1966).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the

district court to decline exercising jurisdiction over the remaining state law claims. *Nagy v. George*,

No. 3:07-CV-368-K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), *aff'd*, 286 F. App'x 135

(5th Cir. 2008) (per curiam); *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th

Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[24]   Nonetheless, this rule is "neither mandatory nor

absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted).   Rather,

district courts are given wide discretion in deciding whether to exercise jurisdiction under such

circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000);

*Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726

("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiff's right.").   In determining

whether to exercise supplemental jurisdiction, courts should consider issues of judicial economy,

convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL

2122175, at *10.

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims.

They arise from the same "common nucleus of operative facts" as her federal claims and can be

---

[24] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

    (1) the claim raises a novel or complex issue of state law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

disposed of promptly.  No litigants will be prejudiced by exercising supplemental jurisdiction over Plaintiff's state law claims.

**B.    Immunity**

In addition to the other defendants, Plaintiff brings state law claims against the City for conspiracy, fraud, negligence, gross negligence, and medical malpractice. (docs. 30 at 19-32, 35-40; 52 at 13.)

The Texas Tort Claims Act (TTCA) "provides a limited waiver of sovereign and governmental immunity for certain tort claims, 'allowing suits to be brought against governmental units only in certain, narrowly defined circumstances.' "[25] *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *13 (N.D. Tex. Aug. 28, 2009) (citing *Tex. Dep't of Crim. J. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)).  "The TTCA's waiver of immunity constitutes the 'only . . . avenue for common-law recovery against the government' on a tort theory."  *Id.* (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)).  Furthermore, the TTCA's limited waiver of sovereign immunity expressly does not apply to claims "arising out of assault, battery, false imprisonment, or *any other intentional tort*."  Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West 2011) (emphasis added); *Swiat v. City of Fort Worth*, No. 4:10-CV-354-A, 2011 WL 2559637, at *5 (N.D. Tex. June 28, 2011).[26]

Texas courts have clearly held that both civil conspiracy and fraud are intentional torts.  *See*

---

[25] Under Texas law, "[a] municipality engaged in a function defined by the Legislature to be governmental is entitled to governmental immunity provided that the Texas Legislature has not otherwise authorized a waiver of this immunity." *Carnaby v. City of Houston*, No. 4:08-cv-1366, 2009 WL 7806964, at *16 (S.D. Tex. Oct. 28, 2009) (quoting *McDonald v. City of the Colony*, No. 2-08-263-CV, 2009 WL 1815648, at *4 (Tex. App.—Fort Worth 2009, no pet.) (mem. op.)).

[26] Texas courts have held that "[t]he fundamental difference between a negligence injury and an intentional injury is the specific intent to inflict injury." *White v. City of Dallas*, No. 3:12-CV-2145-O, 2013 WL 4475738, at *3 (N.D. Tex. Aug. 21, 2013) (quoting *Bridges v. Robinson*, 20 S.W.3d 104, 114 (Tex. App.–Houston [14th Dist.] 2000, no pet.)).

*Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996) (noting "[c]ivil conspiracy is an intentional tort"); *LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 209 (Tex. App.—Dallas 2012, no pet.) (noting "[f]raud is an 'intentional tort' for which the TTCA provides no waiver of immunity").  Accordingly, the City is immune from Plaintiff's fraud and conspiracy claims under the TTCA.

As for her negligence, gross negligence, and medical malpractice claims, "[a] plaintiff cannot circumvent the intentional tort exception by couching [her] claims in terms of negligence." *Swiat*, 2011 WL 2559637, at *5 (quoting *Harris Cty. v. Cabazos*, 177 S.W.3d 105, 112 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).  "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA." *Id*. (quoting *Cabazos*, 177 S.W.3d at 111).

Although Plaintiff generally alleges negligence, gross negligence, and medical malpractice, all of her allegations against the City relate to intentional conduct.  (*See* docs. 30, 52.)  Accordingly, the City is immune from state law Plaintiff's claims under the TTCA.  Her negligence, gross negligence, and medical malpractice claims should therefore also be dismissed.[27] *See, e.g., Birabil v. Martinez*, No. 3:15-CV-2255-M, 2016 WL 4402259, at *7 (N.D. Tex. July 11, 2016) (finding that immunity applied to a plaintiff's negligence claim against a municipality because it was based on underlying intentional tort facts), *adopted by* 2016 WL 4411412 (N.D. Tex. Aug. 18, 2016).

## C.   <u>Conspiracy</u>

Plaintiff appears to allege a conspiracy state law claim against Hospital, Law Firm, Doctor,

---

[27] Even if the court had jurisdiction to consider Plaintiff's conspiracy, fraud, negligence, gross negligence, and medical malpractice claims against the City, she still fails to state a claim upon which relief can be granted for the same reasons as dismissal is recommended on those claims for the other defendants.

and the Shooter.  (doc. 52 at 2-3, 10-12.)

Under Texas law, civil conspiracy is "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) (citations omitted).

Here, Plaintiff generally alleges that a conspiracy of some form existed and repeatedly uses the words "meeting of minds" in her questionnaire answers, but she does not allege any facts in support.  (*See* docs. 30, 52.)  Although she has identified multiple defendants, she does not allege an object to be accomplished, a meeting of minds between those defendants on an object or course of action, or one or more unlawful, overt acts.  Her allegations against the defendants amount to mere "labels and conclusions," which are insufficient to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 555.  She has therefore failed to nudge her claim across the line from conceivable to plausible, and her conspiracy claim should be dismissed.

**D.    Fraud**

Plaintiff alleges fraud against Hospital, Law Firm, Doctor, and the Shooter.  (doc. 52 at 2-3, 10-12.)

"The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the

plaintiff injury." *Shandong Yinguang Chem. Indus. Joint Stock Co. Ltd., v. Potter*, 607 F.3d 1029,

1032-33 (5th Cir. 2010) (per curiam) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co*., 51

S.W.3d 573, 577 (Tex. 2001)).  A claim for fraud is subject to Rule 9(b).  *Potter*, 607 F.3d at 1032.

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the

circumstances constituting fraud with particularity.[28]  *See* Fed. R. Civ. P. 9(b); *City of Clinton v.*

*Pilgrim's Pride Corp*., 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with

particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the

speaker, state when and where the statements were made, and explain why the statements were

fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule

9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim.

*Benchmark Elecs., Inc. v. J.M. Huber Corp*., 343 F.3d 719, 724 (5th Cir. 2003) (quoting  *Williams*,

112 F.3d at 179).

Here, Plaintiff generally alleges fraud against all of the defendants, but fails to allege any

facts in support of her claim.  (*See* doc. 52 at 2-3, 10-13.)  Although she criticizes some of the

defendants and their actions, she does not allege that any of them made any representation to her.

(*See* docs. 30, 52.)  Likewise, she does not allege that they made a material, false representation to

her upon which she relied to her detriment.  (*See* docs. 30, 52.)  Her general, conclusory allegations

fall well short of the "the who, what, when, where, and how" heightened pleading requirement

---

[28] Federal Rule of Civil Procedure 9(b) states:

> **(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with
> particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other
> conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

required under Rule 9(b). *See Williams*, 112 F.3d at 177; *see also* Fed. R. Civ. P. 9(b). Because she fails to allege the elements of fraud with sufficient particularity under Rule 9(b), her fraud claim should be dismissed for failure to state a claim.

### E.    <u>Negligence and Gross Negligence</u>

Plaintiff generally asserts claims for negligence and gross negligence against the individual convicted of the shooting, and a claim for gross negligence against Hospital, Doctor, Law Firm. (docs. 30 at 19-36, 43-44; 52 at 2-3, 10-12.)

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540-41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). A legal duty is a general obligation imposed by law "apart from and independent of promises made and . . . the manifested intentions of the parties—to avoid injury to others." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991). In Texas, "gross negligence is not a separate cause of action apart from negligence." *RLI Ins. Co. v. Union Pac. R. Co.*, 463 F. Supp. 2d 646, 649-50 (S.D. Tex. 2006) (citing *Prati v. New Prime, Inc*., 949 S.W.2d 552, 557 (Tex. App —Amarillo 1997, writ denied)). "Rather, the degree of negligence characterized as gross negligence is relevant only to a recovery of exemplary damages." *Id.* (citing *Riley v. Champion Int'l Corp*., 973 F. Supp. 634, 641 (E.D. Tex. 1997)). "[A] plaintiff cannot recover exemplary damages," however, "until he or she proves an entitlement to actual damages." *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 721-22 (Tex. App.—San Antonio 1994, writ denied) (citing cases); *accord Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 648 (E.D. Tex. 1997) ("Recovery of actual damages in tort is necessary to pursue a gross negligence

claim").

Here, Plaintiff fails to allege specific facts to show that a negligence claim has been properly stated or how the shooter's alleged negligence was the proximate cause of any damages to her. *See, e.g., Algoe v. Texas*, Nos. 3:15-CV-1162-D, 3:15-CV-1204-D, 2016 WL 6902154, at * (N.D. Tex. Sept. 29, 2016) (dismissing a negligence claim for failure to allege sufficient facts to plead a plausible claim for negligence), *adopted by* 2016 WL 6893682 (N.D. Tex. Nov. 21, 2016). Likewise, even if Plaintiff's gross negligence claims are liberally construed as alleging negligence claims against Doctor, Hospital, and Law Firm, Plaintiff still fails to allege sufficient facts to plead a plausible claim for negligence against any of the defendants.  To the extent that she alleges specific facts regarding allegedly negligent conduct by any of the defendants, those facts relate to the defendants' interaction with her son, not her.  For example, she focuses on the shooting of her son, Nurse's delay in treating her son, the excessive wait time at Hospital, and Doctor's treatment of her son, including his use of Propofol.  (*See* doc. 30 at 34-35, 40-45.)  Because she does not allege facts related to the defendants' duty to her, which was breached, Plaintiff fails to state a plausible claim for negligence.   Likewise, because gross negligence is not a separate cause of action and Plaintiff fails to state a plausible claim for negligence against any of the defendants, she also fails to state a plausible claim for gross negligence as well.  Accordingly her negligence and gross negligence claims should be dismissed for failure to state a claim.

**F.**     **Medical Malpractice**

Plaintiff's questionnaire answers can also be liberally construed as alleging a medical malpractice claim against Hospital, Law Firm, and Doctor.  (doc. 52 at 2-3, 10-11.)

Under Texas law, medical malpractice claims require the showing of (1) a duty by the

physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) (stating the elements when "the negligence alleged is in the nature of medical malpractice") (citing *Mills v. Angel*, 995 S.W.2d 262, 267 (Tex. App.—Texarkana 1999, no. pet.); *Denton Reg. Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950 (Tex. App.–Fort Worth 1997, no pet.)).  A hospital may be independently liable for the medical malpractice of its doctors or other employees, such as a nurse, under a direct theory of liability arising from the negligent performance of a duty owed directly to the patient.  *Denton Reg. Med. Ctr.*, 947 S.W.2d at 950.  Absent a legal duty, however, there is no liability.  *Thapar v. Zezulka*, 994 S.W.2d 635, 637-38 (Tex. 1999)  The existence of a legal duty is a pure question of law and must be decided before the issue of standard of care arises.  *Boren v. Texoma Med. Ctr.*, Inc. 258 S.W.3d 224, 227 (Tex. App.—Dallas 2008, no pet.).

The duty to treat a patient with proper professional skill flows from the consensual relationship between the patient and medical professional.  *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 1995).  Only after a medical professional-patient relationship is created can there be a breach of that duty, resulting in medical malpractice.  *Id.* at 423; *Wilson v. Winsett*, 828 S.W.2d 231 (Tex. App.—Amarillo 1992, writ denied).  The medical professional's duty does not run to a third party non-patient, like Plaintiff, however.  *See Thapar*, 994 S.W.2d at 637-38 (noting a medical professional "owe[d] no duty to [plaintiff], a third party nonpatient, for negligent misdiagnosis or negligent treatment"); *see Marcurak v. Doyle*, No. 05-01-00823-CV, 2002 WL 1263900, at *3 (Tex. App.—Dallas 2002, pet. denied) (not designated for publication) (noting that the relevant Texas cases "mandate the conclusion that [the defendant mental health professionals] owed no duty to [the

plaintiff], a third-party nonpatient, to provide competent medical health care to his son").

Here, Plaintiff brings her medical malpractice claim against Law Firm, Doctor, and Hospital. Although she generally alleges that Law Firm was medically negligent, she focuses solely on the conduct of Doctor and Hospital (and its employees) and their treatment of her son. Accordingly, she fails to allege any facts against Law Firm regarding medical malpractice and her claim against it should be dismissed. Additionally, she does not allege a duty owned by Doctor or Hospital (or any of its employees) to her, as a third-party. To the extent that she alleges that a duty existed, that duty related solely to her son (the patient) and not to her (the patient's parent). *See Van Horn v. Chambers*, 970 S.W.2d 542, 545 (Tex. 1998) ("In short, this is ultimately a case of injured parties other than the patient claiming that a doctor . . . negligently treated, a patient's condition. Any duty of reasonable care on [the doctor's] part to avoid such negligence originates solely through the relationship with, and flows only to, his patient."). Accordingly, Plaintiff fails to state a claim for medical malpractice upon which relief can be granted. Her claim therefore should be dismissed.

## VI. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See*

*Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1.  Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has amended her complaint twice and submitted lengthy answers to detailed questions in response to a magistrate judge's questionnaire, but she still fails to state a claim upon which relief can be granted against the defendants.  (*See* docs. 3, 22, 30, 52.)  Accordingly, she has alleged her best case, and no further opportunity to amend her claims appears warranted.

## VII. RECOMMENDATION

Plaintiff's claims on behalf of her son's estate should be **DISMISSED WITHOUT PREJUDICE** unless licensed counsel enters an appearance on its behalf within the time for objecting to this recommendation, or some other deadline set by the Court.  Plaintiff's claims on her own behalf should be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted.  Because it has been recommended that all of Plaintiff's claims against it be dismissed with prejudice, *Methodist Hospital of Dallas' Motion to Dismiss or Alternatively Quash Service and Brief in Support*, filed July 18, 2016 (doc. 53) and *Methodist Hospitals of Dallas' Second Motion to Dismiss or Alternatively Quash Service and Brief in Support*, filed August 15, 2016 (doc. 55), should be **DENIED AS MOOT**.

**SO RECOMMENDED** on this 6th day of January, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

33

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

34